(No. 75-CC-1430— )

MORTON H. JAFFEE and FRANCES E. JAFFEE, etc., Claimant,
*v.* STATE OF ILLINOIS, Respondent.

*Order filed December 18, 1978.*

PER CURIAM.

Claimants, Morton H. Jaffee and Frances E. Jaffee, have brought this action, for themselves and purportedly as representatives of all owners of certain Bridge Revenue Refunding and Improvement Bonds, issued pursuant to an ordinance of the city of East St. Louis, Illinois, enacted on February 8, 1976, and pursuant to a certain trust agreement dated January 1, 1976, between the city of East St. Louis, Illinois, and East St. Louis Union Trust Company, of St. Louis, Missouri, as trustee.

Claimants seek to recover on behalf of the class the sum of $7,275,000.00 for loss of revenue allegedly due to construction of a toll free bridge by the Department of Transportation of the State of Illinois over the Mississippi River at East St. Louis.

The factual basis of the claim is undisputed. In 1948, the City of East St. Louis, Illinois, issued revenue bonds in the amount of $10,000,000.00 to finance construction of the Veterans Memorial Bridge (now the Martin Luther King Bridge) which spans the Mississippi River from a point in East St. Louis, Illinois, to a point in St. Louis, Missouri.

In 1956, the City of East St. Louis issued Bridge Revenue Refunding and Improvement Bonds in the

amount of $15,500,000.00. These bonds were to refinance or refund the 1948 issue, and to finance the cost of constructing an expressway extension leading up to the bridge on the Illinois side in the city of East St. Louis.

The bond issue was authorized by an ordinance of the city of East St. Louis, passed January 1, 1956. The ordiance provided that principal and interest on the new issue of bonds was payable solely from the net revenues of the bridge, which was a toll bridge. As security for the city's obligations, a trust agreement was entered into with the St. Louis Union Trust Company of St. Louis, Missouri. That trust agreement, which was incorporated as part of the ordinance authorizing the issue, provided that the City was to pay all revenues of the bridge into the trust fund, and that the trust company was to pay principal and interest out of the fund to the bondholders as the bonds matured.

Article 7, Section 7.14 of the Trust Agreement, provided:

"The City convenants that, until the bonds secured hereby and the interest thereon shall have been paid of provisions for such payments shall have been made, it will not construct or cause to permit (where such permission is necessary) to be constructed a bridge, any part of which lies within the corporate limits of the City and which will or may divert traffic from the Veteran's Memorial Bridge with a resultant decrease in revenues derived from the operation of the Veteran's Memorial Bridge."

In 1967, the State of Illinois completed construction of a new toll free bridge, known as the Poplar Street Bridge. The toll free bridge was in close proximity to the Martin Luther King Bridge and it is alleged that an approach to the bridge was within the corporate limits of the city of East St. Louis. Traffic from the Martin Luther King Bridge was diverted by the toll free bridge, and as a result revenues of the toll bridge

declined steadily and a default occurred on July 1, 1974.

It is Claimants' position that the State of Illinois tortiously impaired the obligations of the city of East St. Louis to the bondholders, in violation of Article I, Section 10 of the Constitution of the United States, which provides that "No State shall ... pass any ... law impairing the obligation of Contracts."

The State of Illinois has moved to dismiss, contending alternatively the applicable statute of limitations has run, that the police powers of the State of Illinois were such that the State was free to build the Poplar Street Bridge, and that the bondholders assumed the risk of a new bridge being built when they purchased their bonds.

Claimant has also moved for summary judgment on the issue of liability, and has moved for a rehearing on its motion for certification of the class, which was denied by a Commissioner of this Court.

Section 22 of the "Court of Claims Act," Ill. Rev. Stat. Ch. 27, §437.22, provides for a two year period of limitations for cases sounding in tort. The parties agree that Claimants action, for interference with a contractual relationship, sounds in tort.

Respondent asserts that Claimants' cause of action, if any, accrued no later then 1967, when the toll free Poplar Street Bridge was opened to traffic. Claimants contend that their cause of action accrued on July 1, 1974, when the bonds went into default. This action was filed on June 9, 1975. If the cause of action for interference with the contractual relationship between the City and the bondholders accrued at the opening of the toll free bridge, then the action is barred.

As a general rule, a cause of action arising out of negligence accrues, and the statute of limitations begins to run, at the time of the injury. A different rule obtains, however, where the tort arises out of a contractual relationship. In such an instance, the cause of action commences at the time of the breach of duty, not when the damage is sustained. *Pennsylvania Co. v. Chicago, Milwaukee & St. Paul Ry. Co., 144 Ill. 197, 33 N.E. 415; West American Insurance Co., et. al., v. Lobianco, Ill. 69 2d 126, 370 N.E.2d 804.* Thus if we determine that Claimants' cause of action arises out of a contractual relationship, then we must conclude that the statute of limitations began to run at the time of the breach of that contract.

It is clear that the allegedly tortious conduct of the State of Illinois arose out of a contractual relationship. Claimants argue that not only did the State of Illinois tortiously impair the obligations of the City of East St. Louis to the bondholders, but that the State of Illinois was itself bound to the terms of the bond contract. Claimants cite *United States ex rel. Hoffman v. City of Quincy,* 71 U.S. (4 Wall.) 535, 554 (1867), where the Supreme Court said:

"Where a state has authorized a municipal corporation to contract...the state and the corporation in such cases, are equally bound."

Claimants point out that the State has delegated authority to the City of East St. Louis to become contractually obligated to the bondholders. The Illinois Highway Code provides, in pertinent part:

"Each municipality has the power:

(4) *To borrow money, make and issue bonds payable from and secured by a pledge of the net revenue of the bridge* for the acquisition, and construction, reconstruction, improvement, enlargement, betterment or repair of which such bonds may be issued.

(6) *To make contracts of every kind and nature* and to execute all

instruments necessary or convenient for the carrying out of the purposes of this Division of this Article;

(7) *Without limitation of the foregoing,* to borrow money and to accept grants from the United States or any person and to enter into contracts with the United States and such person in connection therewith." Ill. Rev.Stat. Ch. 121, §10-802, 1975 (emphasis added).

## The Illinois Highway Code further provides:

"Without limiting any other powers granted in this Division of this Article, each municipality has the power to provide for the payment of the cost of acquiring, construction, reconstructing, improving, enlarging bettering or repairing any bridge or for the payment of any portion of such cost by one or more issues of revenue bonds of the municipality, payable solely from the net revenue of such bridge. These bonds shall be authorized by ordinance of the corporate authorities of the municipality and shall be in substantially the form set forth in the ordinance.

It shall be plainly stated on the face of each bond in substance that the bond has been issued under the provisions of this Division of this Article and that the taxing power and general credit of the municipality issuing the bond are not pledged to the payment of the bond, or interest thereon, and that the bond and the interest thereon are payable solely from the net revenue of the bridge to acquire, construct, reconstruct, improve, enlarge, better or repair which the bond is issued." Ill. Rev. Stat., Ch. 121, §10-803, 1975.

"An ordinance authorizing bonds under this Division of this Article may contain provisions, which shall be part of the contract with the holders of the bonds, as to...

(7) other agreements with the holders of the bonds or *covenants* or restrictions necessary or desirable to *safeguard the interests of these holders."* Ill. Rev. Stat. Ch. 121, §10-802, 1975 (emphasis added).

We therefore find that Claimants' cause of action, if any, arose out of a contractual relationship, and that the statute of limitations began to run when the contract was breached. The contractual provision alleged to have been breached provided that the city of East St. Louis would not construct, or cause to be constructed, a bridge within the corporate limits of the city which might divert revenues from the toll bridge. This covenant was breached with the opening of the Poplar Street Bridge in 1967, and the cause of action accrued at that time.

As the complaint was filed in 1975, we must con-

clude that this action is barred by the applicable statute of limitations.

For the foregoing reasons, the motion of Respondent to dismiss this action, on the ground that it is barred by the period of limitations, is hereby granted. [1]

1. Although we need not reach the issue we note that in *Jackson Sawmill Co., et al. v. United States et. al.,* (decided July 12, 1978), the United States Court of Appeals for the Eighth Circuit ruled that the construction of the Poplar Street Bridge did not give rise to a constitutional claim under the contracts clause. The Court cited the following language from *United States Trust Co. v. New Jersey,* 431 U.S. 1, 21 (1977):

Although the Contract Clause appears literally to proscibe "any" impairment, this Court observed in *Blaisdell* that "the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula."